LILLIAN ACKERMAN, Respondent, *v.* FIFTH AVENUE COACH COMPANY, Appellant, Impleaded with FREDERICK JACKSON and CHARLES E. BECKER, Defendants.

RUTH ACKERMAN, Respondent, *v.* FIFTH AVENUE COACH COMPANY, Appellant, Impleaded with FREDERICK JACKSON and CHARLES E. BECKER, Defendants.

First Department, December 8, 1916.

Municipal corporations — motor vehicles — right of company operating motor busses to turn at intersection of streets, although automobiles are approaching at the time — when owner of bus liable for injuries to pedestrians caused by another automobile being forced to turn upon the sidewalk — evidence.

A company operating motor busses on city streets has a right to turn them around at the intersection of two streets, and its only duty is to exercise reasonable care in so doing. In making the turn its chauffeur is not obliged to wait until there is no automobile approaching that will have to lessen its speed while he is thus making a lawful use of the street.

If, however, the position of the bus turning around at the intersection of streets is such at the time another automobile is approaching that there is danger of its running into said automobile if the course of the latter is not changed, the owner of the bus may be held liable for the damages inflicted by the automobile in changing its course and running

upon the sidewalk, even though the chauffeur of said automobile is also negligent.

Action against a company operating motor busses on city streets upon the theory that one of its busses while turning at the intersection of two streets was so negligently operated that it cut off the passageway of an automobile and forced the chauffeur thereof to turn onto the sidewalk to avoid a collision with the bus, thereby injuring the plaintiffs. Evidence examined, and *held*, insufficient to warrant an inference that there was any reason to apprehend that the bus would run into the automobile, but that the chauffeur of the automobile turned onto the sidewalk to avoid running into the bus.

That, therefore, the plaintiffs have failed to sustain the burden of showing by a preponderance of the evidence that the owner of the bus was responsible for the accident.

SCOTT and DOWLING, JJ., dissented.

APPEALS by the defendant, Fifth Avenue Coach Company, in each case, from judgments of the Supreme Court in favor of the plaintiffs in each case, entered in the office of the clerk of the county of New York on the 4th day of March, 1916, upon the verdicts of a jury for $7,802.60 in the first case and $12,710.50 in the second case. Appeals are also taken from the orders, one in each case, entered in said clerk's office on the 2d day of March, 1916, as resettled by subsequent orders entered on the 24th day of March, 1916, denying the appellant's motions for new trials made upon the minutes.

*B. H. Ames* [*Frederick Allis* with him on the brief in the *Ruth Ackerman* case], for the appellant.

*Henry L. Scheuerman,* for the respondents.

LAUGHLIN, J.:

At about eight o'clock in the evening on the 14th day of June, 1914, the plaintiffs in these actions were walking down Fifth avenue on the easterly side, and as they passed over the carriageway at the intersection of East Ninetieth street with Fifth avenue and stepped over the curb onto the sidewalk at the southeasterly corner of Fifth avenue and East Ninetieth street they were struck and injured by an automobile which, according to the answers of the defendants Jackson and Becker, was owned by the defendant Becker and was being operated by the defendant Jackson as the chauffeur, coming northerly on Fifth avenue, and at a point some thirty feet south of the south-

erly curb line of East Ninetieth street had turned to the right onto the sidewalk and was passing diagonally toward the northeast over the sidewalk at the southeasterly corner of East Ninetieth street and Fifth avenue. The defendants Jackson and Becker were charged with negligence with respect to the operation of the automobile. They defaulted upon the trial and a verdict was rendered against them. The appellant operates stages or busses for hire on Fifth avenue and elsewhere in the city of Greater New York. The theory upon which recovery has been had against it is that one of its busses, which was running on Fifth avenue north of Ninetieth street and at about the time of the accident had come south on Fifth avenue and was turning about at Ninetieth street to go north, was so negligently operated that it *cut off* the passageway of the automobile which was proceeding northerly on Fifth avenue and forced the chauffeur, who was in charge of the automobile, to turn onto the sidewalk to avoid a collision with the bus. The learned counsel for the appellant contends, among other things, that there is no evidence of negligence on the part of the chauffeur of the bus and that if there be any evidence of negligence on his part it was not the proximate cause of the injuries to the plaintiffs. The automobile was a public vehicle. It is to be inferred from the evidence that it was hired by Max Fishel for he invited James Albes for a ride at between two o'clock and two-thirty P. M. that day. The automobile party consisted of the chauffeur, which the evidence tends to show was Becker but, as already observed, the pleadings of the individual defendants show was Jackson, and Fishel and his two sisters, and Mr. and Mrs. Levine, and a Levine child about two years of age, and Albes. The Levines had alighted from the automobile at Eighty-fifth street and at the time of the accident the automobile was proceeding northerly on Fifth avenue to the residence of Fishel which was No. 509 West One Hundred and Seventieth street. The only occupants of the automobile who were called as witnesses were Albes, who sat in front to the left of the chauffeur, and Fishel, who sat between his sisters on the rear seat, and his sister Cecelia, who was seated on the rear seat at the right. There is some conflict in the evidence with respect to the time of the accident.

Fishel says it occurred about seven o'clock, but the other evidence tends to show that it was a few minutes before eight o'clock; and the evidence is uncontroverted that it was a clear, pleasant evening, and that it was still sufficiently light to see objects plainly.    There is no substantial conflict in the evidence either with respect to the speed of the automobile or the speed at which the bus was going in making the turn.    The express evidence is to the effect that the automobile was going from eight to ten miles an hour and that the bus in making the turn was moving a little faster than a man ordinarily walks or at about four miles an hour.    One of the witnesses gives the speed of the automobile as that of a trolley car between crossings or of a horse as ordinarily driven on the public streets, and he says that the automobile was moving "a little bit faster" than the bus; but the preponderance of the evidence shows the speed of the respective vehicles about as I have stated.    Albes testified that as they approached Ninetieth street he observed two or three busses at the northwesterly corner of Ninetieth street and Fifth avenue; and that "while we approached Ninetieth street one of the stages just turned and cut us off," leaving no room for the automobile to pass; and that to avoid striking the bus the chaffeur turned toward the sidewalk and applied more power, giving more speed to the automobile, and that the automobile ran into the plaintiffs; that the automobile, when it turned onto the sidewalk, was within about two feet of the bus, and that the line of travel of the automobile was within about one foot of the easterly curb of Fifth avenue; that when the automobile was at Eighty-ninth street the "stage was in Ninetieth" street, and that before the automobile reached Ninetieth street "the stage come from uptown and made the turn and just cut us off;" that the bus made a turn in front of the automobile; that when the automobile turned onto the sidewalk the bus was at the corner of Ninetieth street about two feet in front of the automobile, and that the front wheels of the bus were about two feet from the sidewalk and the back wheels were about twenty feet from the walk; that when the automobile was at Eighty-ninth street the bus was turning around at Ninetieth street; and that when the automobile neared Ninetieth street the bus was not headed east and west

First Department, December, 1916.          [Vol. 175.

but had turned north, and that if the automobile had continued in its course it would have run in between the bus and the curb and not into the rear of the bus; that the chauffeur was nervous as was the witness, and that after the automobile went upon the sidewalk he endeavored to have the chauffeur stop it and that the chauffeur reduced the speed but jumped from the automobile after it left the sidewalk and turned easterly into Ninetieth street, about twenty-five to thirty feet from the corner, and that the witness jumped from the automobile about the same time, and that the automobile with the others in it continued on, and that the bus was about four feet from the automobile when he first saw it. There is a conflict in the evidence with respect to the distance the automobile went after the accident before it stopped. Some of the testimony tends to show that it continued on until it struck a lamp post on the southerly side of East Ninetieth street, one hundred and eighty-three feet six inches easterly of Fifth avenue, and other testimony indicates that it came to a stop in the carriageway of East Ninetieth street, about sixty or seventy or one hundred feet east of Fifth avenue. Fishel testified that the automobile came to a stop before he and the chauffeur and Albes alighted therefrom; and that although he was looking north he did not see the bus at all and did not hear any bell or signal from it; and his sister testified that she saw the bus coming and became very excited and frightened; that "the bus was coming right close to us, coming right into us;" and she indicated the distance the bus was from the automobile when she first saw it as about three or four feet. On cross-examination she said that the bus was backing toward the automobile and that the first thing she saw was the back of the bus "coming towards us." There is no other testimony or evidence in the case indicating that the bus backed up or that it came to a stop while making the turn. E. Daniel Wallstein, called by the plaintiff, testified that he and his brother and his brother-in-law were standing on the easterly sidewalk of Fifth avenue near the curb, about thirty-six feet south of the southerly curb line of Ninetieth street, facing westerly, waiting to take a north-bound bus, that three south-bound busses stopped on the westerly side of the avenue, and then one of them started down the avenue,

and another, the view of which from where he was standing was partly cut off by the other, started to turn around, and when the "wheels" were a little more than half way across, and "the distance between the stage and curb was narrow," the automobile came along about four or five feet away from the curb going north; that the bus "continued right on its course up to the curb to the northeast corner in front of the Carnegie mansion;" that at the time the automobile went onto the sidewalk the bus was within a foot or two of the curb, and that the front wheels of the bus were right up to the curb; that the automobile came nearer to the sidewalk and finally onto it; that he heard a signal on the bus to go ahead before it started from the other side of the avenue, but he heard no other signal from the bus or automobile. On cross-examination he said that he did not notice the automobile coming up the avenue until it passed within five feet in front of him; that the bus which turned was the second in the order of the busses as they stopped on the westerly side of the avenue before it turned; and that at the time of the accident "the first bus had gone down Fifth Avenue, the second one turned around, and the third one was still standing there;" that before starting to turn the bus had stopped at the southerly end or side of the Ninetieth street entrance to Central Park; that it made a circular turn, and in doing so came southerly to some extent into the narrow part of Fifth avenue, by which the witness meant the part below the entrance to the park, and southerly of the southeasterly corner of Fifth avenue and Ninetieth street; but that it had started to make the turn in the entrance to Central Park; and that as the front wheels of the bus came about a foot from the curb it had so far completed the turn that the sides of the front wheels and the side of the front of the bus were toward the curb and the bus was partly headed uptown, but "it had not straightened out entirely, but was pointing partly uptown;" that when the bus had so far made the turn that the front wheels were thus within a foot of the curb and "the rear of the bus was circling around" he first saw the automobile; that the automobile was then in the street almost in front of him, about even with him, and the

rear end of the bus was about in a line with the front wheel of the automobile; that if the automobile had then attempted to turn to the left it would have smashed into the bus; that the automobile by going "away over to the left hand side," which was the wrong side of the street, could have passed the bus; and that while he could not say how close it went to the bus, if it had continued on there was room for it to pass between the curb and the rear of the bus, but not to pass the bus, and unless its course was changed it would necessarily have run into the right-hand side of the bus; that the automobile turned onto the sidewalk within about a foot or a foot and a half from where he was standing; and that he did not see it until it was within five feet from him, and at that time it was going at about the ordinary speed of a trolley car. The other Mr. Wallstein testified that they were waiting to take a bus, and, as those coming from downtown were crowded, they expected to take the one which turned around at that point; that he was looking north and saw three busses standing on the westerly side of Fifth avenue just above the Ninetieth street entrance to the park; that one of the busses went down town and the second started to come around, making a circle a little below the curb at the southerly side of the entrance to the park, and as the front of it was near the easterly sidewalk and the rear of it was out in the roadway, the automobile came past; and that he could not say how far ahead of this bus the one that started ahead of it and was going downtown was when the bus commenced to make the turn. In other respects his testimony is a substantial corroboration of that given by his brother. Patrick Mahoney, the chauffeur of the bus, was in the employ of the Westcott Express Company and had not been in the employ of the appellant for two and a half years. He was called by appellant and testified that he stopped his bus at the regular stopping place in the park circle on the westerly side of Fifth avenue; that his passengers alighted, and some of them, destined for downtown, boarded the bus ahead; that that type of bus started on second gear, and he "put in the second gear" on receiving a signal to go ahead, and looked south and there was no vehicle approaching north of Eighty-ninth street, but there were

three or four vehicles between Eighty-eighth and Eighty-ninth streets coming north; that in making the turn he did not go south of the southerly side of Ninetieth street, but remained in the opening formed by the intersection of Fifth avenue with East Ninetieth street on one side and the entrance to the park on the other; that those busses cannot be turned in the width of the avenue at other points, but they can be turned in this opening; and that he made the turn without reaching the curb or having to stop; that the speed of the bus in making the turn was uniform and was four miles an hour; that he did not stop or intend to stop until he reached the northeasterly corner which his evidence tends to show was the customary place for busses making the turn to stop; that the south-westerly corner of Fifth avenue and the Ninetieth street entrance to the park was the regular stopping place for south-bound busses at that time; that the bus ahead of him did not go on until after he started; that the southerly curb of the entrance to the park is further south than the southerly curb of Ninetieth street; that while making the turn he saw no vehicle coming north; and that he heard no gong or horn from the automobile and did not see the accident; that his attention was first attracted thereto by the screams after he stopped at the northeasterly corner; and that, as there was no vehicle in the vicinity, he gave no signal either by the horn or waving his arm on starting to make the turn. The conductor of the bus testified that he was standing on the rear platform; that while the bus was turning and when it was from five to eight feet north of the southeasterly corner of Ninetieth street his attention was attracted by a scream and he turned and saw the automobile go onto and cross the sidewalk and turn into Ninetieth street; that the automobile was then at least twenty-five or thirty feet from him; that the bus proceeded on and stopped at the northeasterly corner of East Ninetieth street, and that he did not go back or get the names of any witnesses; that he did not see the automobile until he heard the screams; that before making the turn the bus had stopped on the westerly side about the middle of the entrance to the park, but was headed south; and that there was another bus some fifteen feet or more ahead of his bus when it thus stopped.

Appellant's starter at Fifth avenue and Ninetieth street testified that he did not see the accident, but that his attention was attracted thereto by a woman's screams, and that he then saw the automobile leaving the sidewalk and at that time the bus had "made a complete turn, and was straightening up to go north" to the usual stopping place at the northeasterly corner where they have to remain until directed by him to leave. The defendant presented a map showing Fifth avenue and Ninetieth street and the entrance to the park; and it showed that the southerly curb to the entrance to the park is about twenty feet south of the southerly curb of Ninetieth street; the map shows that the carriageway of the avenue is forty feet and two inches in width. One of the witnesses testified that the bus was about twenty-four feet in length. An ordinance of the city was introduced in evidence by the plaintiffs, over objection interposed in behalf of the appellant, which provides as follows: "Article 5, section 2. Signals. A driver about to turn either from a standstill or while in motion, shall give timely signal by hand or whip or in some other unmistakable manner indicating the direction of the turn. This is especially important when turning to the left." This is the only material evidence relating to the charge of negligence against the appellant.

It is not altogether clear that the evidence was sufficient to require the submission of the case to the jury as against the appellant. Some of the testimony taken literally would seem to indicate that perhaps the automobile was very close to the bus before the bus, in making the turn, approached the easterly curb sufficiently near to obstruct the passage of the automobile; but in the light of the other testimony given by the same witnesses it seems quite clear that the bus had nearly completed the turn and occupied a position in the street which would prevent an automobile from passing between it and the easterly curb before the automobile reached that point. The appellant had a lawful right to turn its busses around at that point and its only duty was to exercise reasonable care in so doing. In making the turn its chauffeur was not obliged to wait until there was no automobile approaching that would have to lessen its speed while he was thus making a lawful use

of the street. The preponderance of evidence is that before the automobile came along the bus had so far completed the turn that the side of its front wheels were parallel with the curb and within a foot or two thereof, and that thus the front wheels were headed north and the body of the vehicle was partly headed north and was straightening up as the rear of the vehicle was diagonally approaching the curb to get in line with the front. At the slow speed, at which the uncontroverted evidence shows the bus made the turn, the only reasonable inference is that the chauffeur of the automobile had he exercised reasonable care would have seen that he could not proceed on the line he was traveling and at the speed at which he was going without running into the bus. If the position of the bus in the street had been such at the time that the automobile came along that there was danger that it would run into the automobile if the course of the automobile was not changed then of course the appellant could be held liable for the damages inflicted by the automobile in thus changing its course even though the chauffeur of the automobile was also negligent; but I find nothing in the evidence to warrant the inference that there was any reason to apprehend that the bus would run into the automobile. On the contrary, the evidence shows that the chauffeur of the automobile turned to the left onto the sidewalk to avoid running into the side of the bus. I am of opinion, therefore, that the plaintiffs have failed to bear the burden of showing by a preponderance of the evidence that the appellant was responsible for this accident which unfortunately resulted in very serious injuries to them, and that the verdict, in so far as it is predicated upon a finding that the appellant was guilty of negligence which was the proximate cause of the accident is against the weight of the evidence. It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., and PAGE, J., concurred; SCOTT and DOWLING, JJ., dissented.

Judgment and order in each case reversed, new trial ordered, costs to appellant to abide event.